PAMELA J. BONDI
Attorney General
TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
Acting United States Attorney
ALEXANDER P. ROBBINS (Cal. Bar No. 251845)
Acting Chief, Criminal Appeals Section
Assistant United States Attorney
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:    (213) 894-2400
     E-mail:     alexander.p.robbins@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>ISMAEL GARCIA, JR.,<br>JAIME HECTOR RAMIREZ,<br>RONNY ROJAS,<br><br>      Defendants. | Nos. 2:25-cr-655-MEMF, 5:25-cr-264-SSS, 2:22-CR-573-FWS<br><br><u>GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND DISQUALIFY</u> |

Plaintiff United States of America hereby submits its consolidated response in opposition to defendants' motions to dismiss the indictments against them and to disqualify Acting United States Attorney Bilal A. Essayli. (*Garcia* Dkt. 21; *Ramirez* Dkt. 10; *Rojas* Dkt. 258.)[1]

//

//

---

[1] The defense motions in these three cases have been transferred to U.S. District Judge J. Michael Seabright of the District of Hawaii. Order of the Chief Judge 25-126, U.S. District Court for the Central District of California (Sept. 8, 2025). (*See Garcia* Dkt. 24; *Ramirez* Dkt. 25; *Rojas* Dkt. 259.)

The government's opposition is based on the attached memorandum, the attached exhibits, the files and records in these cases, and any other evidence that the Court may consider.

Dated: September 19, 2025                    Respectfully submitted,

                                            */s/ Alexander P. Robbins*

                                            ALEXANDER P. ROBBINS
                                            Assistant United States Attorney
                                            Attorney for Plaintiff
                                            UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES .......................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.      INTRODUCTION ............................................................................................................... 1

II.     STATEMENT OF FACTS .................................................................................................. 2

III.    ARGUMENT ........................................................................................................................ 3

       A.      Analytical Framework ............................................................................................ 3

       B.      Mr. Essayli Is Validly Serving as the Acting United States Attorney ..................... 5

       C.      An Acting United States Attorney Under the FVRA Is Not Limited to a 120-Day Period of Acting Service. ........................................................................................ 9

       D.      Mr. Essayli Is Authorized to Supervise Criminal Prosecutions Pursuant to a Delegation from the Attorney General Even If He Cannot Serve as Acting United States Attorney. .............................................................................................. 11

       E.      Mr. Essayli's Designation Does Not Violate the Appointments Clause. ...................... 15

       F.      Dismissal of Indictments or Disqualification of the Entire U.S. Attorney's Office Would Be Unwarranted Even If There Were Merit To Defendants' Arguments. .......... 16

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022) ................................... 13, 14, 16

*CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218 (5th Cir. 2022) ..................................................... 19

*CFPB v. Cmty. Fin. Servs. Ass'n of Am.*, 601 U.S. 416 (2024) ............................................................ 19

*Duenas v. Garland*, 78 F.4th 1069 (9th Cir. 2023) ............................................................... 3, 15, 16

*Edmond v. United States*, 520 U.S. 651 (1997) ............................................................................ 15, 16

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. DHS*, 107 F.4th 1064 (9th Cir. 2024) ............. 13, 14

*Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016) ................................. 4, 9, 10

*Kajmowicz v. Whitaker*, 42 F.4th 138 (3d Cir. 2022) ............................................................................ 14

*Kinsella v. United States ex rel. Singleton*, 361 U.S. 234 (1960) ........................................................ 19

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010) ...................................................................... 20

*Myers v. United States*, 272 U.S. 52 (1926) .......................................................................... 3, 15, 16

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) .......................................................................................... 4

*Peters v. Kiff*, 407 U.S. 493 (1972) ........................................................................................................ 19

*Russello v. United States*, 464 U.S. 16 (1983) ......................................................................................... 7

*Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132 (2d Cir. 2009) ........................................... 15

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ......................................................................................... 20

*Stein v. Kaiser Found. Health Plan, Inc.*, 115 F.4th 1244 (9th Cir. 2024) ........................................... 17

*Tumey v. Ohio*, 273 U.S. 510 (1927) ...................................................................................................... 19

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ................................................................................. 16

*United States v. Baldwin*, 541 F. Supp. 2d 1184 (D.N.M. 2008) .......................................................... 17

*United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003) ....................................................................... 18

*United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981) ..................................................................... 18

*United States v. Eaton*, 169 U.S. 331 (1898) ........................................................................................ 15

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) ..................................................................... passim

*United States v. Giraud*, —F. Supp. 3d—, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) ........................ 6

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ................................................................... 15, 17

1    *United States v. Jones*, 65 F.4th 926 (7th Cir. 2023) ............................................... 2

2    *United States v. Lingala*, 91 F.4th 685 (3d Cir. 2024) ........................................... 18

3    *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69 (D.P.R. 2000) ............................ 17, 18

4    *United States v. Shah*, 43 F.4th 356 (3d Cir. 2022) .............................................. 18

5    *United States v. Smith*, 962 F.3d 755 (4th Cir. 2020) ....................................... 15, 19

6    *United States v. Suescun*, 237 F.3d 1284 (11th Cir. 2001) ................................... 17

7    *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) .......................... 19

8    *United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002) .......................... 18

9    *United States v. Vlahos*, 33 F.3d 758 (7th Cir. 1994) .......................................... 18

10   *United 2States v. Vrdolyak*, 593 F.3d 676 (7th Cir. 2010) ...................................... 2

11   *United States v. W.R. Grace,* 526 F.3d 499 (9th Cir. 2008) .................................... 2

12   *United States v. Whittaker*, 268 F.3d 185 (3d Cir. 2001) ..................................... 18

13   *United States v. Williams*, 68 F.4th 564 (9th Cir. 2023) ...................................... 18

14   *United States v. Young*, 541 F. Supp. 2d 1226 (D.N.M. 2008) ............................. 18

15   *Ward v. Village of Monroeville*, 409 U.S. 57 (1972) ............................................ 19

16   *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ................ 19

17   **FEDERAL STATUTES**

18   5 U.S.C. § 101 ......................................................................................................... 5

19   5 U.S.C. § 105 ......................................................................................................... 5

20   5 U.S.C. § 3345 ............................................................................................... passim

21   5 U.S.C. § 3346 ................................................................................................. 1, 4, 10

22   5 U.S.C. § 3347 .............................................................................................. 9, 13, 14

23   5 U.S.C. § 3348 ...................................................................................................... 13

24   5 U.S.C. § 3349 ..................................................................................................... 1, 7

25   6 U.S.C. § 112 ........................................................................................................ 14

26   22 U.S.C. § 2651a ..................................................................................................... 8

27   28 U.S.C. § 503 .................................................................................................. 4, 11

28   28 U.S.C. § 509 ............................................................................................... passim

28 U.S.C. § 510 ................................................................................................ 6, 13, 14

28 U.S.C. § 515 ...................................................................................................... passim

28 U.S.C. § 516 .......................................................................................... 12, 13, 17

28 U.S.C. § 517 ................................................................................................ 12, 13

28 U.S.C. § 518 ................................................................................................ 12, 17

28 U.S.C. § 519 ................................................................................................ 16, 17

28 U.S.C. § 533 ........................................................................................................ 12

28 U.S.C. § 541 .......................................................................................................... 5

28 U.S.C. § 542 ........................................................................................................ 17

28 U.S.C. § 543 ........................................................................................................ 12

28 U.S.C. § 546 ......................................................................................................passim

28 U.S.C. § 547 .................................................................................................... 3, 11

28 U.S.C. § 3347 ........................................................................................................ 4

29 U.S.C. § 153 ........................................................................................................ 10

35 U.S.C. § 3 ............................................................................................................ 13

**FEDERAL RULES AND REGULATIONS**

Fed. R. Crim. P. 7 .................................................................................................... 17

Fed. R. Crim. P. 12 .................................................................................................. 19

28 C.F.R. § 0.137 ................................................................................................... 3, 6

**OTHER**

U.S. Const., art. II ..................................................................................................... 3

*Designating an Acting Attorney General*,
    42 Op. O.L.C. 182 (2018) .................................................................................. 9

*District Court for the Southern District of New York appointed Jay Clayton*,
    https://www.nytimes.com/2025/08/18/nyregion/jay-clayton-us-attorney-manhattan-
    trump.html ......................................................................................................... 11

*District Court in Nevada appointed Dayle Elieson*,
    https://apnews.com/general-news-f92e92a41ce9467aaf60dfba7ce79301 ................. 11

*Temporary Filling of Vacancies in the Office of United States Attorney*,
    27 Op. O.L.C. 149 (2003) .................................................................................. 11

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3

Defendants have moved to dismiss their indictments on the ground that Bilal A. Essayli cannot

4

serve as the Acting United States Attorney for the Central District of California. The premise is wrong,

5

and the conclusion does not follow.

6

Bilal A. Essayli is validly serving as the Acting United States Attorney under the Federal

7

Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq*. Once (a) Mr. Essayli resigned as interim

8

United States Attorney, and (b) the Attorney General appointed him as Special Attorney and designated

9

him as First Assistant United States Attorney (exercising authority under 28 U.S.C. §§ 509, 510, and

10

515), Mr. Essayli automatically became the Acting United States Attorney under 5 U.S.C. § 3345(a)(1).

11

Defendants are wrong that Mr. Essayli's time limit for serving as Acting United States Attorney

12

under the FVRA has expired. Under the FVRA, an acting official, by default, may serve for 210 days

13

after the vacancy occurs. *See* 5 U.S.C. § 3346. Where, as defendants contend here (*Garcia* Mot. 28),[2]

14

the vacancy occurred during a presidential transition, that time is extended to 300 days. *See id.* § 3349a.

15

That time may be further extended if the President nominates someone for the position of United States

16

Attorney. *See id.* § 3346. Even if that does not happen, on defendants' view, Mr. Essayli may serve as

17

Acting United States Attorney well into November. There is no basis for defendants' suggestion that,

18

rather than applying the FVRA's time limits to Mr. Essayli's acting service, this Court should impose

19

the 120-day time limit applicable to an interim United States Attorney appointed under § 546(a), given

20

that defendants correctly assume that under controlling Ninth Circuit precedent both § 546 and the

21

FVRA are available to designate officials to perform the functions of United States Attorney in this

22

district.

23

Moreover, even if Mr. Essayli's service as Acting United States Attorney were in doubt, there

24

would still be no basis to bar him or the Assistant United States Attorneys assigned to these cases from

25

supervising or prosecuting defendants. At minimum, the Attorney General validly appointed Mr.

26

Essayli as a Special Attorney under 28 U.S.C. § 515 and directed him to supervise the United States

27

28

---

[2] "*Garcia* Mot.," "*Ramirez* Mot.," and "*Rojas* Mot." refer to the motions to dismiss and disqualify filed by each defendant in his respective case.

Attorney's Office for the Central District of California. Whether or not Mr. Essayli technically qualifies as Acting United States Attorney, the Attorney General has validly delegated to him the authority to supervise pending prosecutions and other matters in the Office, subject in turn to supervision by the Attorney General and Deputy Attorney General, both of whom are Senate-confirmed.

Finally—and critically—Mr. Essayli is not the only prosecutor assigned to any of these cases. Defendants do not challenge the validity of the Assistant United States Attorneys assigned to these matters, who as employees of the Department of Justice exercise the Attorney General's delegated authority and are subject to her supervision. There would be no basis to dismiss indictments or halt federal law enforcement in the largest district in the country even if there were any merit to defendants' FVRA arguments. Neither the FVRA nor Section 546 authorizes dismissal of an indictment. Nor would such a remedy make any sense, as the Ninth Circuit has recognized. *See United States v. Gantt*, 194 F.3d 987, 998 (9th Cir. 1999) ("An infirmity in the United States Attorney's appointment would not generally affect the jurisdiction of this court so long as a proper representative of the government participated in the action."), *overruled on other grounds by United States v. W.R. Grace,* 526 F.3d 499, 506 (9th Cir. 2008) (en banc). The FVRA is not "a get-out-of-jail card," *United States v. Vrdolyak*, 593 F.3d 676, 682 (7th Cir. 2010), nor a clever loophole to avoid the "criminal jurisdiction" of the United States, *United States v. Jones*, 65 F.4th 926, 930 (7th Cir. 2023). Dismissal of an indictment is warranted only for due process violations or defects under Rule 12 of the Federal Rules of Criminal Procedure, and defendants can show neither. Indeed, defendants cannot even show standing to advance their Appointments Clause arguments, since they point to no basis to conclude that Mr. Essayli was personally involved in the decisions to prosecute them.

## II.    STATEMENT OF FACTS

On January 17, 2025, E. Martin Estrada, the United States Attorney for the Central District of California who had been appointed by the previous president and confirmed by the Senate, resigned. *See* https://www.justice.gov/usao-cdca/pr/us-attorney-martin-estrada-leave-justice-department-after-serving-chief-federal-law. By virtue of the default provisions of the FVRA, 5 U.S.C. § 3345(a)(1), Joseph T. McNally, who was then First Assistant United States Attorney for the district, became Acting United States Attorney. On March 27, the Attorney General appointed Mr. Essayli as United States

2

Attorney pursuant to 28 U.S.C. § 546, effective April 2. (Exh. 1.) Pursuant to that statute, Mr. Essayli was authorized to serve as United States Attorney on an interim basis for 120 days. *See* 28 U.S.C. § 546(c)(2).

On July 29—before Mr. Essayli's 120-day term as United States Attorney was set to expire—Mr. Essayli resigned from that position. (Exh. 2.) The same day, the Attorney General appointed Mr. Essayli as a Special Attorney under authority including 28 U.S.C. §§ 509, 510, and 515; designated him First Assistant United States Attorney, "effective upon his resignation as United States Attorney"; and noted that, as First Assistant United States Attorney, Mr. Essayli "will have the authority to serve as Acting United States Attorney upon a vacancy in that office, subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349d." (Exh. 3.)  Because the office of United States Attorney for the Central District of California was vacant and Mr. Essayli had been designated the First Assistant in writing by the Attorney General, in accordance with Department of Justice regulations, 28 C.F.R. § 0.137(b), Mr. Essayli began serving as Acting United States Attorney under the default provision of the FVRA, 5 U.S.C. § 3345(a)(1) on July 29, 2025. He continues to serve in that role today.

## III.    ARGUMENT

### A.    Analytical Framework

United States Attorneys are "inferior officers" in the Executive Branch, U.S. Const. art. II, § 2, cl. 2; *Myers v. United States*, 272 U.S. 52, 159 (1926); *Gantt,* 194 F.3d at 999, who are authorized to represent the United States in all litigation occurring within their district "[e]xcept as otherwise provided by law," 28 U.S.C. § 547. Senate confirmation is not constitutionally required: "the Appointments Clause allows Congress to vest their appointment in the head of a department," such as the Attorney General. *Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023). By statute, however, U.S. Attorneys are generally appointed by the President, "by and with the advice and consent of the Senate." 28 U.S.C. § 541(a).

When a United States Attorney resigns or otherwise vacates his office, Congress has provided three methods for allowing someone to perform the duties of that office on a temporary basis—and ensuring the uninterrupted functioning of the United States Attorney's Office—until a new Senate-

confirmed United States Attorney takes office. Each of those methods has specific rules, benefits, and drawbacks. It is typically up to the President, or principal officers acting on his behalf, to decide which method is best suited to the circumstances, and those methods generally supplement each other.

First, in 28 U.S.C. § 546, Congress authorized the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant" to serve on an interim basis for 120 days or until a Senate-confirmed United States Attorney takes office. *Id.* § 546(a), (c). The Attorney General may not appoint someone whose nomination has been rejected by the Senate, but a pending nominee may serve as interim U.S. Attorney. *Id.* § 546(b). If an interim appointment expires, and the vacancy has not otherwise been filled, the district court may appoint an interim United States Attorney. *Id.* § 546(d).

Second, in the generally applicable FVRA, Congress authorized certain individuals to temporarily perform the duties of a vacant office "in an acting capacity," 5 U.S.C. § 3345(a)(1), subject to specified time limitations, *id.* § 3346. The default rule is that the "first assistant" to the vacant office serves as the "acting officer," *id.* § 3345(a)(1), unless the President designates a Senate-confirmed officer or a senior agency employee to serve in that role, *id.* § 3345(a)(2)–(3). The FVRA generally prohibits current nominees for an office from filling the vacancy on an acting basis, unless they served as the first assistant for at least 90 days within the year preceding the vacancy. *Id.* § 3345(b)(1); *see NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017). The FVRA is the "exclusive means" for authorizing an "acting official" to temporarily perform the duties of a vacant office, "unless" Congress has expressly provided otherwise or the President makes a recess appointment. 28 U.S.C. § 3347(a). Where Congress has enacted an agency-specific statute that provides a means for acting service, both that statute and the FVRA are available. 28 U.S.C. § 3347(a); *see also Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016).

Third, Congress has authorized the Attorney General to delegate authority, including the non-exclusive duties of a United States Attorney, to other Department officers or employees. The Attorney General is the "head of the Department of Justice," 28 U.S.C. § 503, and is vested with "[a]ll functions" of the Department's officers, agencies, and employees, subject to narrow exceptions not relevant here, *id.* § 509. That includes the United States Attorneys' functions to conduct litigation in their districts.

Indeed, § 515(a) specifies that the Attorney General may "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct." Congress also independently vested the Attorney General with plenary authority to conduct and supervise litigation on behalf of the United States. *See id.* §§ 516–19.

The Attorney General also has unquestioned authority to appoint various attorneys within the Department and to delegate her functions to those attorneys. Congress has specifically empowered the Attorney General to appoint other attorneys to carry out the Department's functions, including special attorneys and special assistants to the Attorney General, *id.* § 515(a), Assistant United States Attorneys, *id.* § 542(a), special attorneys to assist United States Attorneys, *id.* § 543, and other "officials" to "detect and prosecute crimes against the United States," *id.* § 533(1). And the Attorney General may delegate "any function of the Attorney General" to "any other officer, employee, or agency of the Department of Justice," *id*. § 510, and may direct any Department officer "or attorney specially appointed by the Attorney General under law" to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct," *id*. § 515(a); *see also id.* § 518(b).

### B.    Mr. Essayli Is Validly Serving as the Acting United States Attorney

Under the FVRA, when an Executive Branch office subject to Presidential appointment and Senate confirmation (a "PAS" office) becomes vacant due to the resignation of the incumbent officeholder, another official may perform all the functions of that office on an acting basis. *See* 5 U.S.C. § 3345(a). There is no dispute that the office of the United States Attorney for the Central District of California is a PAS office in the Executive branch subject to the FVRA, *see* 28 U.S.C. § 541; 5 U.S.C. §§ 101, 105, and that it is vacant. Accordingly, the FVRA permits the Executive Branch to appoint an acting officer to temporarily exercise the functions and duties of that office.

As explained, § 3345(a) identifies three categories of individuals who may perform the functions of a vacant office on an acting basis. The President may designate another PAS officer, or certain other agency officers or employees, to serve as the acting official. 5 U.S.C. § 3345(a)(2)–(3). If the President does not make such a selection, the "first assistant to the office" shall, by default,

1  "perform the functions and duties of the office temporarily in an acting capacity," subject to statutory

2  time limits. *Id.* § 3345(a)(1).

3        That default provision is at issue here. As explained above, Mr. Essayli resigned his position as

4  interim United States Attorney on July 29, before his term was set to expire. (Exh. 2.) The same day,

5  pursuant to authority including 28 U.S.C. §§ 509, 510, and 515, the Attorney General appointed Mr.

6  Essayli as a Special Attorney and designated him as the First Assistant United States Attorney, in

7  accordance with longstanding DOJ regulations, 28 C.F.R. § 0.137(b). (Exh. 3.) Accordingly, under the

8  default provision of the FVRA, Mr. Essayli "shall perform the functions and duties of the office" of

9  United States Attorney "in an acting capacity," subject to the time limits of the FVRA. 5 U.S.C.

10  § 3345(a)(1).

11        Notwithstanding that statutory authorization, defendants argue that Mr. Essayli cannot perform

12  the duties of the United States Attorney in an acting capacity because he was not "already" the First

13  Assistant United States Attorney on January 17, 2025, when the last Senate-confirmed United States

14  Attorney resigned and the vacancy first arose. (*Garcia* Mot. 29; *Ramirez* Mot. 28; *Rojas* Mot. 5.)[3] That

15  contention lacks merit. The FVRA does not require a first assistant to be an incumbent *at the moment*

16  the vacancy arose in order to serve as an acting PAS officer under the default provision in § 3345(a)(1).

17        There is no basis for an "already-in-place" (*Rojas* Mot. 6) requirement in the statutory text. A

18  "vacant office" under § 3345(a) is a continuing state. The statute provides that "[i]f" a PAS officer

19  "dies, resigns, or *is* otherwise unable to perform" the functions of the office—present tense—then the

20  first assistant "shall perform" those functions in an acting capacity. 5 U.S.C. § 3345(a) (emphasis

21  added). Mr. Essayli's appointment complies with the plain meaning of that provision: the office of

22  United States Attorney was vacant when Mr. Essayli was designated as First Assistant United States

23  Attorney and remains vacant, so Mr. Essayli "shall perform" the duties of the office of United States

24  Attorney on an acting basis (subject to statutory time limits). *Id.* Defendants' contrary interpretation

25  ignores the present-tense phrasing of the statute and the ongoing nature of a vacancy. Moreover, the

26

27        [3] The district court in *United States v. Giraud*, —F. Supp. 3d—, 2025 WL 2416737 (D.N.J.

28  Aug. 21, 2025), credited this argument, but it was incorrect to do so for the reasons explained below. *See also* Government's Opening Brief, No. 25-2635 (3d Cir. Sept. 12, 2025).

1    FVRA provides that, if a vacancy exists, "the first assistant *to the office* of such officer shall perform

2    the functions and duties of the office temporarily in an acting capacity." *Id.* (emphasis added). The

3    statute does not require the individual to have been serving as the first assistant to any particular PAS

4    officeholder, much less at any particular time. The upshot is that whoever is the first assistant to a

5    vacant office, at any time during the period of the vacancy, automatically becomes the acting officer,

6    subject to the FVRA time limits—as one would expect. Contrary to defendants' argument, the FVRA

7    does not impose a counterintuitive limitation that restricts acting service only to the individual

8    (assuming there was one) who happened to be serving as the first assistant to the PAS officeholder

9    when the vacancy initially arose.

10       Indeed, Congress knew how to impose an "already-in-place" requirement. Elsewhere in the

11   same section, Congress explicitly imposed backward-looking eligibility requirements that turn on a

12   person's status during the time preceding the vacancy. When "Congress includes particular language in

13   one section of a statute but omits it in another section of the same Act, it is generally presumed that

14   Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United*

15   *States*, 464 U.S. 16, 23 (1983) (cleaned up). Two paragraphs later, in § 3345(a)(3), Congress made

16   ineligible for a presidential acting-officer designation any official who had not served in the agency for

17   at least 90 days in the year before the vacancy arose. In the next subsection of the statute, as well,

18   Congress prohibited having an acting official also be the nominee for the vacant office unless the

19   nominee had served as the first assistant for at least 90 days before the vacancy arose. *See id.*

20   § 3345(b)(1)(A). Both provisions turn on the state of affairs during the time period immediately

21   preceding the vacancy. No such backward-looking eligibility requirement, however, applies to an

22   official who is appointed first assistant under § 3345(a)(1) and is not the nominee for the position in

23   question. To the contrary, the general prohibition on a nominee serving as an "acting officer" expressly

24   contemplates that a first assistant may serve as an acting officer even if he "did not serve in the position

25   of first assistant" prior to the vacancy, § 3345(b)(1)(A)(i), so long as he is not also the nominee, *id.*

26   § 3345(b)(1)(B).

27       That plain-text interpretation of the FVRA is both straightforward and longstanding. Indeed, the

28   Government Accountability Office ("GAO")—a component of the Legislative Branch statutorily

7

charged with monitoring FVRA compliance, *see* 5 U.S.C. § 3349(b)—has long agreed that a first assistant may serve as an acting officer under the FVRA even if he does not become first assistant until after the vacancy first arose. *See* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001), *available at* https://www.gao.gov/assets/gao-02-272r.pdf. The Department of Justice's Office of Legal Counsel ("OLC"), which provides controlling advice to Executive Branch officials on questions of law concerning FVRA compliance, has taken the same position. *See* Designation of Acting Associate Attorney General, 25 Op. O.L.C. 177, 179-81 (2001). And it makes sense—the default nature of the provision does not suggest that it "trigger[s]" only once, at "the moment the vacancy occurs." (*Garcia* Mot. 30; Ramirez Mot. 29–30 (both cleaned up).) A vacancy is a continuing thing, and the automatic and present-tense nature of § 3345(a)(1)'s default rule means that whoever is serving as the first assistant at a particular moment in time during the vacancy automatically becomes the acting official for the specified time period, unless the President instead invokes (a)(2) or (a)(3). If only the "already-in-place" first assistant were eligible to serve, then § 3345(a)(1) would be less useful as an automatic default rule. There are approximately 1,000 PAS officials in the Executive Branch,[4] and § 3345(a)(1) applies to first assistants precisely because an agency head can often ensure that there is a first assistant in place, so the President does not have to personally fill every PAS vacancy that arises.

This interpretation of the first-assistant provision in 5 U.S.C. § 3345(a)(1) does not, as defendants suggest, swallow up the other methods of designating acting officials. (*Garcia* Mot. 30; *Ramirez* Mot. 30 (both quoting *Giraud*'s invocation of the canon against "surplusage").) There are at least two significant circumstances where the President cannot rely on subsection (a)(1) to select an acting officer and thus subsections (a)(2) and (a)(3) continue to play an important role. When the first assistant position is itself a PAS office, (a)(1) is unavailable because the Executive Branch cannot appoint a first assistant without Senate confirmation. Instead, the President must use (a)(2) or (a)(3). That is often the case for the highest positions in agencies. *See, e.g.*, 22 U.S.C. § 2651a(a)(2) (both

---

[4] *See* Center for Presidential Transition, Presidential Transition Guide 93 (2023), *available at* https://presidentialtransition.org/wp-content/uploads/sites/6/2023/11/2023-Presidential-Transition-Guide.pdf (compiling data from the 2016 United States Government Policy and Supporting Positions (Plum Book)).

8

Secretary of State and Deputy Secretary are PAS offices). Subsections (a)(2) and (a)(3) also play a distinct role when the President wants to leave the current first assistant in place and appoint someone else to be the acting officer—*e.g.*, because the individual serving as first assistant is the best suited to perform the important second-in-command functions of a first assistant. *See generally, e.g.*, *Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018) (discussing the designation of Matthew Whitaker as Acting Attorney General under § 3345(a)(3)). Those provisions are far from superfluous, and do not require reading into § 3345(a)(1) a limitation that does not exist.

Accordingly, upon his designation as First Assistant United States Attorney, Mr. Essayli automatically began serving as the Acting United States Attorney, subject to the time limits set forth in the FVRA.[5]

## C.    An Acting United States Attorney Under the FVRA Is Not Limited to a 120-Day Period of Acting Service.

Defendants contend that even if Mr. Essayli was validly designated Acting United States Attorney, his time period for serving was limited to 120 days and therefore expired before they were indicted. (*Garcia* Mot. 36–43; *Ramirez* Mot. 36–43; *cf. Rojas* Mot. 6.)[6] That is wrong.

Defendants are correct to "assume[]"—under controlling Ninth Circuit precedent—that both 28 U.S.C. § 546 and the FVRA are available, nonexclusive options to designate and appoint officials to perform the functions of a United States Attorney. (*Garcia* Mot. 37 & n.30 (citing *Hooks*, 816 F.3d at 556).) Section 3347(a) of the FVRA, the Act's "exclusivity" provision, explains how the FVRA interacts with agency-specific statutes. The FVRA is the "exclusive means for temporarily authorizing an acting official" to serve in a position otherwise subject to the advice and consent of the Senate "unless . . . a statutory provision expressly . . . designates an officer or employee to perform the

---

[5] Defendants devote substantial effort to arguing that Mr. Essayli's resignation from the interim position did not create a new vacancy under the FVRA. (*Garcia* Mot. 31–34; *Ramirez* Mot. 31–34.) But whether that resignation created a new vacancy is immaterial to the present motions. Whether it was Mr. Estrada's resignation in January (during a presidential inaugural transition, *see* § 3349a) or Mr. Essayli's resignation in July that created the vacancy, Mr. Essayli has at least two months left to serve as the Acting United States Attorney under the FVRA. In either case, the Court would be compelled to deny defendants' motion.

[6] The indictments against defendant Rojas were returned years before Mr. Essayli came into office. (*Rojas* Dkt. 1 (Dec. 2022), Dkt. 8 (June 2023).)

9

functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a). When another statutory provision provides for designation of an acting officer, the FVRA is no longer the "exclusive" means of temporarily authorizing service as an acting official. But it still is *available*, unless the other statute expressly displaces the FVRA. A contrary reading would invert the meaning of the FVRA's exclusivity provision, transforming it from a rule about when the FVRA is exclusive of other statutes into one about when other statutes are exclusive of the FVRA.

The Ninth Circuit has adopted just that interpretation of the statute. In *Hooks*, the Ninth Circuit rejected the argument that the FVRA was inapplicable because an agency-specific statute—there the National Labor Relation Act's vacancy provision applicable to the NLRB General Counsel—"expressly provide[d] a means" for designating an acting officer. 816 F.3d at 556 (discussing 29 U.S.C. § 153(d)). The "text of the respective statutes" "belied" any such argument. *Id*. at 555. The existence of an agency-specific statute means that "the FVRA would continue to provide an *alternative procedure* for temporarily occupying the office," such that "the President is permitted to elect between these two statutory alternatives." *Id*. at 556 (cleaned up, emphasis in original). So too here. An interim appointment under 28 U.S.C. § 546 supplements, rather than supplants, the methods for designating an Acting United States Attorney under the FVRA, as defendants effectively concede.

Defendants also argue that, even if the FVRA is available for an acting official to perform the functions of the office of United States Attorney, the Court should strike out the express time limits the FVRA provides for acting service and replace it with the 120-day time period from 28 U.S.C. § 546(c). But if, as the Ninth Circuit's decision in *Hooks* suggests, and as defendants assume, the FVRA is fully available even after an interim appointment under § 546 has expired, then all of it is available, including the distinct, specific time limits applicable to acting service for which the FVRA expressly provides. *See* 5 U.S.C. §§ 3346, 3349a. Defendants' arguments to the contrary are premised on a "conflict[]" between the FVRA and § 546 that does not exist. (*Garcia* Mot. 38; *Ramirez* Mot. 38.)

Nor would failing to engraft a 120-day time limit on the FVRA render § 546(d)'s method for district court appointment "superfluous." (*Garcia* Mot. 39–40; *Ramirez* Mot. 39.) Section 546(d) has done plenty of work in the many years in which the government's longstanding position has been both the FVRA and § 546 are available methods for dealing with United States Attorney vacancies, *see*

1  *Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149–50

2  (2003). There have been many times where the Executive Branch has allowed an interim United States

3  Attorney's appointment to expire, clearing the way for the district court to make an appointment under

4  § 546(d).[7] Both methods have pros and cons. For example, an interim United States Attorney appointed

5  by the court under § 546(d) may serve indefinitely until the vacancy is filled, whereas an Acting United

6  States Attorney is subject to the FVRA's express time limits. Neither of those distinct authorities

7  supersedes or subsumes the other.

8      Defendants declare that § 546(c)(2)'s 120-day time limit "should be strictly enforced to prevent

9  the very 'mischief' it was designed to counteract." (*Garcia* Mot. 44; *Ramirez* Mot. 44; *see also Rojas*

10  Mot. 6.) But that has nothing to do with the FVRA, which is a different statute and serves a distinct,

11  though overlapping, function.

12      **D.    Mr. Essayli Is Authorized to Supervise Criminal Prosecutions Pursuant to a**

13          **Delegation from the Attorney General Even If He Cannot Serve as Acting United**

14          **States Attorney.**

15      Although 28 U.S.C. § 547(1) authorizes the United States Attorney to "prosecute for all offenses

16  against the United States" in his district, the authority to do so is not exclusive. The Attorney General

17  has the same authority.

18      All the functions of the United States Attorney, including the power to prosecute, are also vested

19  in the Attorney General, *id.* §§ 509, 515. The Attorney General unquestionably has the authority—

20  through multiple reinforcing statutes—to prosecute crimes and supervise litigation in the Central

21  District of California. The Attorney General is the "head of the Department of Justice," 28 U.S.C.

22  § 503, and is vested with "[a]ll functions" of the Department's officers, agencies, and employees,

23  subject to narrow exceptions not relevant here, *id.* § 509. That includes the United States Attorneys'

24  functions to conduct litigation in their districts. Indeed, § 515(a) specifies that the Attorney General

25  may "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are

26

27      [7] For example, the District Court in Nevada appointed Dayle Elieson in 2018, *see*
    https://apnews.com/general-news-f92e92a41ce9467aaf60dfba7ce79301, and the District Court for the
28  Southern District of New York appointed Jay Clayton in 2025, *see*
    https://www.nytimes.com/2025/08/18/nyregion/jay-clayton-us-attorney-manhattan-trump.html.

authorized by law to conduct." The Attorney General also has separate, direct authority to conduct and supervise all litigation on behalf of the United States. The Attorney General may "personally conduct and argue any case in a court of the United States in which the United States is interested." *Id.* § 518(b). The Attorney General also may "supervise all litigation to which the United States, an agency, or officer thereof is a party" and "direct all United States attorneys, assistant United States attorneys, and special attorneys" in exercising their duties. *Id.* § 519; *see also id.* §§ 516–517.

The Attorney General also has unquestioned authority to appoint various attorneys within the Department of Justice and to delegate her functions to those attorneys. The Attorney General may appoint special attorneys and special assistants to the Attorney General, *id.* § 515(a), Assistant United States Attorneys, *id.* § 542, special attorneys to assist United States attorneys, *id.* § 543, and other "officials" to "detect and prosecute crimes against the United States," *id.* § 533(1). The Attorney General may delegate "any function of the Attorney General" to "any other officer, employee, or agency of the Department of Justice," *id.* § 510, and may "specifically direct[]" any Department of Justice officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by law to conduct," *id.* § 515(a); *see id.* § 518(b) (the Attorney General "may direct . . . any officer of the Department of Justice" to "conduct and argue any case in a court of the United States in which the United States is interested"); *id.* §§ 516–517.

The Attorney General exercised those authorities here in appointing Mr. Essayli as a "Special Attorney" and designating him as "First Assistant United States Attorney for the Central District of California." Mr. Essayli's appointment as "Special Attorney to the United States Attorney General" expressly authorized him to "conduct in the Central District of California, any kind of legal proceedings, civil or criminal, … which United States Attorneys are authorized to conduct." (Exh. 4.) And his designation as First Assistant United States Attorney, in the absence of an appointed United States Attorney, authorized him to lead the office. The Attorney General thus validly delegated to Mr. Essayli, in his capacity as Special Attorney and First Assistant, the authority to conduct and supervise legal proceedings in the Central District of California. Mr. Essayli may lawfully exercise that authority,

including as it relates to the criminal proceedings at issue here, even if he is ineligible to serve as the Acting United States Attorney under the FVRA.

Defendants argue that the Attorney General cannot use those statutes to "install" Mr. Essayli "to the office of a U.S. Attorney wholesale." (*Garcia* Mot. 35; *Ramirez* Mot. 35.) But that is not what the Special Attorney appointment does. It does not empower him to be the "acting official." Instead, it *delegates* to him the Attorney General's authority to conduct criminal prosecutions and supervise litigation in the Central District of California. *See* 28 U.S.C. §§ 509, 510, 515–17, 518–19.

In other words, an acting official derives authority from the FVRA and is authorized to perform all "the functions and duties of the office" for which the official is acting. 5 U.S.C. § 3345(a). A non-acting official, by contrast, derives authority from a delegation, such as the Attorney General's delegation here, which was authorized by 28 U.S.C. § 510 and other statutes. That difference is significant because a non-acting official cannot exercise authority that is "exclusive to the officer, or nondelegable." *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. DHS*, 107 F.4th 1064, 1074 (9th Cir. 2024). That distinction is reflected in the FVRA itself, which, as defendants recognize (*Garcia* Mot. 26; *Ramirez* Mot. 26), invalidates only the improper exercise of the *exclusive* functions associated with an office—that is, those functions that *only* a properly appointed official holding the office may perform. *See* 5 U.S.C. § 3348(a)(2), (d). In short, while the FVRA is the exclusive means of empowering an official to be an acting official, *see id.* § 3347(a), it does not forbid the Attorney General from delegating to Mr. Essayli the *nonexclusive* functions of the office of United States Attorney, such as supervising criminal prosecutions. Nor does it forbid the Attorney General from delegating to Mr. Essayli her own authority to prosecute crimes and supervise litigation.

Every court of appeals to consider the issue—including the Ninth Circuit—has agreed with this plain-text interpretation of the FVRA. In *Arthrex, Inc. v. Smith & Nephew, Inc.*, the Federal Circuit held that the FVRA did not forbid delegating the functions of a PAS office to a non-acting official. *See* 35 F.4th 1328, 1338 (Fed. Cir. 2022). That case concerned a challenge to the denial of a rehearing request of an order invalidating a patent. The authority to decide such rehearing requests was vested in the Director of the U.S. Patent and Trademark Office, a PAS office. *See id.* at 1332; 35 U.S.C. § 3(a)(1). But because the offices of Director and Deputy Director were vacant, the rehearing decision was made

by the Commissioner of Patents, who had been delegated all of the nonexclusive duties and functions of the Director under a standing order issued by a previous Director. *See Arthrex*, 35 F.4th at 1332. As relevant here, the patent holder challenged the rehearing denial on the ground that § 3347's exclusivity provision prohibited the wholesale delegation of the Director's authority to a subordinate officer and thus deprived the decision of "force or effect" under § 3348(d)(1). *See id.* at 1335. The Federal Circuit rejected the challenge, explaining that the FVRA "does not . . . restrict" the delegation and performance of a "PAS officer's delegable duties when he is absent." *Id.* at 1339. Duties are generally delegable, and the "universe of delegable PAS-officer duties is expansive, potentially encompassing every Executive agency." *Id.* at 1337.[8]

The Ninth Circuit relied on *Arthrex* when resolving a similar FVRA objection in *Gonzales & Gonzales Bonds*, 107 F.4th at 1073 (citing *Arthrex*, 35 F.4th at 1336). *Gonzales & Gonzales Bonds* concerned a challenge to a surety-bond rule that was originally issued by Chad Wolf as Acting Secretary of Homeland Security, which was later ratified by the Senate-confirmed Secretary of Homeland Security. *See id.* at 1071–73. The plaintiff challenged the validity of the rule on the ground that the Acting Secretary had been improperly designated, and the Ninth Circuit *agreed* that he "lacked authority to promulgate the Rule." *Id.* at 1072. But the Ninth Circuit nevertheless upheld the rule based on its subsequent ratification, on the ground that the Secretary's authority to promulgate that rule "was delegable." 107 F.4th at 1076 ("We are not aware of any law that limits the Secretary's ability to delegate promulgation of immigration surety bond rules."). Under the relevant statutes—as here—the statutory scheme vesting authority in the cabinet-level official also granted general authority to "delegate any of [those] functions" to subordinates. *Id.* at 1076. *Compare* 6 U.S.C. § 112(b)(1) *with* 28 U.S.C. § 510. The Third Circuit came to a similar conclusion in *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022), in the context of upholding a DOJ rule against an FVRA challenge to the Acting Attorney General who originally issued it. *See id.* at 151 (expressing concern that an overly broad reading of nondelegable functions under the FVRA "would effectively cripple the operation of the

---

[8] The Federal Circuit rejected the argument that such an interpretation of the FVRA would render § 3347(b) superfluous. *See id.* at 1338. When "Congress grants an agency head general delegation authority but specifies that certain duties are non-delegable," the court explained, "§ 3347(b) makes clear that the FVRA still applies to those non-delegable duties." *Id.*

14

federal government"); *see also Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 135 (2d Cir. 2009) (holding that the FVRA did not prohibit an inferior officer from performing a function of a PAS officer who had resigned, because the agency's regulations permitted the PAS officer to delegate that function).

In sum, the FVRA does not prohibit the Attorney General from delegating to Mr. Essayli her own separate authority to prosecute crimes and supervise litigation in the Central District of California.

### E.    Mr. Essayli's Designation Does Not Violate the Appointments Clause.

"[T]he Appointments Clause mandates that the President appoint the principal 'Officers of the United States,' subject to 'the Advice and Consent of the Senate.'" *Duenas*, 78 F.4th at 1072 (quoting U.S. Const. art. II, § 1, cl. 2). "Principal officers include cabinet heads and other high-level appointees." *Id.* The Appointments Clause "also allows Congress to vest the appointment of 'inferior' officers, who still exercise significant authority but do not need Senate confirmation, in 'Heads of Departments.'" *Id.*; *see also United States v. Smith*, 962 F.3d 755, 763 (4th Cir. 2020) ("Principal officers must be appointed by the President with the advice and consent of the Senate. Inferior officers may be appointed in the same manner, but doing so is not constitutionally required." (citations omitted)). "When distinguishing between these types of officers, we mainly look at whether the officer's work is directed and supervised at some level by other officers appointed by the President with the Senate's consent." *Duenas*, 78 F.4th at 1073 (cleaned up); *see Edmond v. United States*, 520 U.S. 651, 663 (1997).

Mr. Essayli is an inferior officer for two reasons. First, United States Attorneys are themselves inferior officers. *See Myers*, 272 U.S. at 159 (referring to "a United States attorney" as "an inferior officer"); *Gantt*, 194 F.3d at 999–1000 ("we conclude that United States Attorneys are inferior officers"); *United States v. Hilario*, 218 F.3d 19, 24–26 (1st Cir. 2000). That means that interim United States Attorneys and Acting United States Attorneys are at most inferior officers, too. *See, e.g., Hilario*, 218 F.3d at 28–29. But even were that not so, an Acting United States Attorney "under the FVRA is 'only charged with the performance of the duty of the superior for a limited time and under special and temporary conditions.'" *Smith*, 962 F.3d at 764 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). Even "acting heads of departments"—such as an Acting Attorney General—"are not principal

15

officers because of the temporary nature of the office." *Id.* at 765 (cleaned up, citing cases). Accordingly, contrary to defendants' argument (*Garcia* Mot. 49–54; *Ramirez* Mot. 49–54), it was valid for Congress to authorize the Attorney General, as Head of the Department of Justice, *see Duenas*, 78 F.4th at 1073, to appoint Mr. Essayli under 28 U.S.C. § 546(a) and later to designate Mr. Essayli as First Assistant United States Attorney and thereby make him Acting United States Attorney under the FVRA.

Defendants also argue that the Supreme Court impliedly overruled *Gantt* in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). (*See Garcia* Mot. 52; *Ramirez* Mot. 52.) But *Arthrex* held that Administrative Patent Judges in the Department of Commerce were principal officers because they possessed unreviewable authority to make decisions on behalf of the agency, *see* 594 U.S. at 23, which is decidedly not the case for United States Attorneys, whose decisions are supervised and can be reversed by the Attorney General and the Deputy Attorney General. In any event, *Arthrex* reaffirmed that "whether one is an 'inferior' officer depends on whether he has a superior other than the President." *Id.* at 13 (cleaned up, quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997)). Unlike the members of the Patent Trial and Appeal Board at issue in *Arthrex*, United States Attorneys are "'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate'"—namely, the Attorney General—and therefore qualify as inferior officers under the principles on which *Arthrex* itself relied. 594 U.S. at 13 (quoting *Edmond*, 520 U.S. at 663); *see* 28 U.S.C. § 519 ("[T]he Attorney General . . . shall direct all United States attorneys . . . in the discharge of their respective duties."). Defendants' argument also overlooks *Myers*, in which the Supreme Court explicitly observed almost 100 years ago that United States Attorneys are inferior officers. *See Myers*, 272 U.S. at 159.

### F.    Dismissal of Indictments or Disqualification of the Entire U.S. Attorney's Office Would Be Unwarranted Even If There Were Merit To Defendants' Arguments.

Regardless, none of the issues discussed above affects the authority of the Assistant United States Attorneys assigned to these cases. Those Assistant United States Attorneys can continue prosecuting these cases because they derive their power to prosecute directly from the Attorney General, and do not depend on a delegation of authority from the United States Attorney. Indeed,

1    United States Attorneys lack express statutory authority to appoint Assistant United States Attorneys.

2    Rather, it is the Attorney General who has that authority—and the authority to remove them, too. 28

3    U.S.C. § 542(a) ("The Attorney General may appoint one or more assistant United States attorneys in

4    any district when the public interest so requires."); *id*. § 542(b) ("Each Assistant United States attorney

5    is subject to removal by the Attorney General."). The Attorney General also has express statutory

6    authority to "supervise all litigation to which the United States, an agency, or officer thereof is a party,

7    and [to] direct all United States attorneys, assistant United States attorneys, and special attorneys

8    appointed under section 543 of this title in the discharge of their respective duties." *Id.* § 519; *see id.* §

9    516 ("[T]he conduct of litigation in which the United States, an agency, or officer thereof is a party, or

10   is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under

11   the direction of the Attorney General.").

12        That is why the Ninth Circuit has already held that an invalidly appointed United States

13   Attorney does not mean that the government lacked the power to prosecute a defendant. *See Gantt*, 194

14   F.3d at 998 ("An infirmity in the United States Attorney's appointment would not generally affect the

15   jurisdiction of this court so long as a proper representative of the government participated in the

16   action."). A case can be prosecuted without a U.S. Attorney: "indictments need only be signed by an

17   'attorney for the government.'" *Id.* at 998 (quoting Fed. R. Crim. P. 7(c)(1)). The First Circuit has

18   likewise concluded that an Assistant United States Attorney's "ability to act does not hinge on the

19   authority of the local United States Attorney, but derives from the Attorney General's plenary power

20   over litigation to which the United States is a party, *see* [28 U.S.C.] § 516." *Hilario,* 218 F.3d at 22; *see*

21   *also United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir. 2001) ("An appointment of a United

22   States Attorney that is not made as provided by the Appointments Clause does not affect the

23   Government's power to prosecute."); *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 n.2 (D.P.R.

24   2000) (similar); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) (similar).[9]

25

26        [9] Defendants' footnoted claim that *Gantt*'s holding on this point was "dicta" (*Garcia* Mot. 58
     n.44; *Ramirez* 58 n.44) fails under even the most modest scrutiny. The sole authority they cite for their
27   claim undermines it, explaining that discussion of a "germane" issue "after reasoned consideration" is
     binding precedent in the Ninth Circuit, albeit in the context of disagreeing with that doctrine. *Stein v.*
28   *Kaiser Found. Health Plan, Inc.*, 115 F.4th 1244, 1251 (9th Cir. 2024) (en banc) (Forrest, J.,
     concurring) (cleaned up).

Pursuant to their authority derived from the Attorney General, the assigned Assistant United States Attorneys can continue to prosecute these cases—which were initiated by validly empaneled grand juries—subject to supervision by both Mr. Essayli and Senate-confirmed officials in Main Justice, including the Attorney General and the Deputy Attorney General.

Defendants' attempt to disqualify the entire U.S. Attorney's Office (*Garcia* Mot. 61–62; *Ramirez* Mot. 61–62) likewise fails. "[E]very circuit court that has reviewed an officewide disqualification has reversed." *United States v. Williams*, 68 F.4th 564, 572 (9th Cir. 2023) (reversing officewide disqualification); *see United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003) (same); *United States v. Whittaker*, 268 F.3d 185, 194 (3d Cir. 2001) (same); *United States v. Vlahos*, 33 F.3d 758, 762–63 (7th Cir. 1994) (same); *United States v. Caggiano*, 660 F.2d 184, 190–91 (6th Cir. 1981) (same); *cf. United States v. Shah*, 43 F.4th 356, 360, 362–64 (3d Cir. 2022) (affirming denial of similar motion). Because "disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify a specific" prosecutor, "not all the attorneys in the office." *Bolden*, 353 F.3d at 879 (cleaned up). And here, defendants cannot justify disqualifying any prosecutor who worked on these cases, let alone every prosecutor in the Office. *See United States v. Lingala*, 91 F.4th 685, 694–95 (3d Cir. 2024) (affirming denial of motion to disqualify prosecution team). "The disqualification of Government counsel is a drastic measure"—one "a court should hesitate to impose . . . except where necessary." *Bolden*, 353 F.3d at 878 (cleaned up). This Court should not do so here.

Even were Mr. Essayli not eligible to serve as the Acting United States Attorney, "this Court could not dismiss the indictment on that basis." *United States v. Young*, 541 F. Supp. 2d 1226, 1235 (D.N.M. 2008); *see also Gantt*, 194 F.3d at 998; *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 (D.P.R. 2000) (even assuming that the United States Attorney's appointment is invalid, "Defendant's remedy would not be the dismissal of his indictment, for the appointment does not affect defendant's basic constitutional rights."), *aff'd sub nom. United States v. Valdez-Santana*, 279 F.3d 143 (1st Cir. 2002). Defendants' claim that their indictments violate due process (*Garcia* Mot. 57 & 58 n.44; *Ramirez* Mot. 57 & 58 n.44; *Rojas* Mot. 8), derives entirely from their mistaken contentions that Mr. Essayli cannot serve as Acting United States Attorney nor Special Attorney and First Assistant, and that remedy is inappropriate in any event. As the Fourth Circuit put it in similar circumstances, "we are

mystified as to exactly what the connection is between the appointment of which" defendants "complain[]" and their "right to a fair trial." *Smith*, 962 F.3d at 765. There is a due process right to an impartial judge, *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972); *Tumey v. Ohio*, 273 U.S. 510, 533–34 (1927), and a properly constituted jury or grand jury, *Peters v. Kiff*, 407 U.S. 493, 501–05 (1972). But there is no due process right to choose one's prosecutor. Nor is there any government conduct in these cases that denies "fundamental fairness" and is "shocking to the universal sense of justice." *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960) (cleaned up).

Federal Rule of Criminal Procedure 12 provides for dismissal for (a) a defect in instituting the prosecution or (b) deficiency of the indictment. *See* Fed. R. Crim. P. 12(b)(3)(A), (B). The indictments in these cases are not deficient under Rule 12(b)(3)(B) because Rule 7(c) requires only that the indictment state facts that constitute a federal offense and be signed by an attorney for the government, which happened here. Nor have defendants identified any defect in instituting these prosecutions. Defendants do not dispute that the grand juries that indicted them were properly empaneled. And, as explained, there is no requirement that the United States Attorney personally sign indictments, and each of the indictments at issue here was signed by an attorney for the government other than Mr. Essayli. (*Garcia* Dkt. 13; *Ramirez* Dkt. 1; *Rojas* Dkt. 1, 8.)[10]

In any event, defendants lack standing to challenge their indictments or to seek the dismissal of the Assistant United States Attorneys working on their cases on the ground that Mr. Essayli was improperly serving as Acting U.S. Attorney. Federal courts lack jurisdiction to consider claims where a plaintiff lacks standing. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

---

[10] Defendant Rojas individually advances an Appropriations Clause argument (Mot. 9–10), but without explaining why a violation of that clause would lead to dismissal of an indictment. The lone authority he cites is *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), an out-of-circuit district court decision that expressly stated it was *not* dismissing an indictment based on an Appropriations Clause violation, *see id.* at 1307, but which quoted a concurring opinion about how the Consumer Financial Protection Bureau's (purportedly) unconstitutional funding structure should result in dismissal of its civil actions. *See CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) (Jones, J., concurring). *But see CFPB v. Cmty. Fin. Servs. Ass'n of Am.,* 601 U.S. 416, 424 (2024) (CFPB's "funding mechanism does not violate the Appropriations Clause"). Regardless, whatever the "intuitive appeal to applying Judge Jones's logic," 740 F. Supp. 3d at 1307, it is far afield from this case, where there is no dispute about the funding for the grand jury that indicted Rojas or the prosecutors who are prosecuting him.

1  "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Mayfield v. United*

2  *States*, 599 F.3d 964, 969 (9th Cir. 2010) (citation and quotation omitted). To establish the irreducible

3  constitutional minimum of standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is

4  fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a

5  favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendants have offered

6  no reason to believe that Mr. Essayli was personally involved in approving or filing the indictments in

7  their specific cases, or—other than supervising the response to the motions to dismiss—is in any way

8  directing the prosecutions against them. They can show no injury from the allegedly improper service

9  of Mr. Essayli as Acting United States Attorney.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28