CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JAMES ANGLIN FLYNN (Bar No. 337608)
Email: james_flynn@fd.org
DREW HAVENS (Bar No. 306280)
AYAH A. SARSOUR (Bar No. 340280)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012-4202
Telephone: (213) 894-2854
Fax: (213) 893-0081

Attorneys for Defendants
ISMAEL GARCIA, JR. &
JAIME HECTOR RAMIREZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cr-655-MEMF |
| *Plaintiff*, | |
| v. | |
| ISMAEL GARCIA, JR., | |
| *Defendant*. | |
| UNITED STATES OF AMERICA, | Case No. 5:25-cr-264-SSS |
| *Plaintiff*, | |
| v. | **Defendants' Motion for Limited Reconsideration of Order on Motions to Dismiss and to Disqualify** |
| JAIME HECTOR RAMIREZ, | |
| *Defendant*. | |

# TABLE OF CONTENTS

INTRODUCTION .................................................................. 1

I.    Mr. Essayli is serving as at least an inferior officer. .......................... 1

II.   The Appointments Clause requires confirmation of inferior officers, unless Congress clearly provides otherwise by statute. ................... 6

III.  No statute exempts Mr. Essayli's service from the Appointments Clause's confirmation requirement ........................................ 8

      III.A.    5 U.S.C. § 3345 and 28 U.S.C. § 546. .............................. 8

      III.B.    28 C.F.R. § 0.137(b). .............................................. 9

      III.C.    28 U.S.C. §§ 509 and 510. ...................................... 10

      III.D.    28 U.S.C. §§ 542 and 543. ...................................... 10

      III.E.    28 U.S.C. § 515. ................................................ 11

IV.   The Court should resolve the constitutional issue and reconsider its remedies analysis. ........................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)......................................15

*Brown v. DirecTV, LLC*, No. 13-cv-1170,
2014 WL 12772076 (C.D. Cal. Dec. 11, 2014)...............................13

*Cody v. Kijakazi*, 48 F.4th 956 (9th Cir. 2022)......................................14, 16

*Ex parte Siebold*, 100 U.S. 371 (1879) ......................................5

*Freytag v. Comm'r*, 501 U.S. 868 (1991) ......................................3

*In re Hennen*, 38 U.S. 230 (1839)......................................5

*Lucia v. SEC*, 585 U.S. 237 (2018)......................................2, 3, 6, 15, 16

*Morrison v. Olson*, 487 U.S. 654 (1988) ......................................4

*Myers v. United States*, 272 U.S. 52 (1926) ......................................4, 5, 6, 7

*NLRB v. Aakash, Inc.*, 58 F.4th 1099 (9th Cir. 2023)......................................4

*OWLink Tech., Inc. v. Cypress Tech. Co.*, No. 2:21-cv-717,
2023 WL 4291978 (C.D. Cal. Jan. 23, 2023)...............................13

*Perkins v. United States*, 20 Ct. Cl. 438 (1885)......................................6

*Ryder v. United States*, 515 U.S. 177 (1995)......................................15

*Trump v. United States* ("*Trump S. Ct.*"),
603 U.S. 593 (2024)......................................3, 4, 6, 7, 8, 10, 11, 14, 15

*United States v. Eaton*, 169 U.S. 331 (1898)......................................3

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999)......................................4

*United States v. Germaine*, 99 U.S. 508 (1878) ......................................2

*United States v. Hartwell*, 73 U.S. 385 (1867) ......................................5

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000)......................................4

1

*United States v. Maurice*, 26 F. Cas. 1211 (C.C.D. Va. 1823).....................................7

2

*United States v. Perkins*, 116 U.S. 483 (1886) ........................................................5, 6

3

*United States v. Trump* ("*Trump*"), 740 F. Supp. 3d 1245
    (S.D. Fla. 2024) ........................................3, 4, 7, 10, 11, 12, 13, 15

4

5

*Weiss v. United States*, 510 U.S. 163 (1994) .................................................................7

6

7

### Statutes and Constitutional Provisions

5 U.S.C. § 3345 ..................................................................................................8

8

7 U.S.C. § 610 ....................................................................................................8

9

28 U.S.C. § 509 ................................................................................................10

10

28 U.S.C. § 510 ................................................................................................10

11

28 U.S.C. § 515 ..........................................................................10, 11, 12, 13, 15

12

28 U.S.C. § 519 ................................................................................................12

13

28 U.S.C. § 542 ............................................................................................9, 10

14

15

28 U.S.C. § 543 ....................................................................................10, 12, 13

16

28 U.S.C. § 546 ..................................................................................................8

17

U.S. Const. art. II, § 2, cl. 2 ...................................................................6, 7, 13, 14, 16

18

19

### Rules and Regulations

20

28 C.F.R. § 0.137 ..............................................................................................9

21

L.R. 7-18 ........................................................................................................13

22

23

24

**Other Sources**

Bilal Essayli (@USAttyEssayli), X (Oct. 28, 2025),
    https://perma.cc/F3JJ-GS96 .................................................................2

Officers of the U.S. Within the Meaning of the Appointments Clause,
    31 Op. O.L.C. 73 (2007) ...............................................................3, 5

United States Attorneys, 2 Op. O.L.C. 58 (1978) ..........................................4

USAO Cent. Dist. of Cal. (@usao_cdca), YouTube,
    *Anti-ICE Rioting Arrests Announcement* (Oct. 29, 2025),
    https://www.youtube.com/watch?v=nKhPVSRQMPY ......................................2

**INTRODUCTION**

The defense motions argued that Mr. Essayli's service is incompatible with the Appointments Clause.  Mot. 49–54; Reply 29–31.  In a supplemental brief responding to the Court's questions about remedies, the defense explained that even without his "acting" title, Mr. Essayli's continued supervision of criminal prosecutions would still be unconstitutional: as an inferior officer, he would have to be confirmed by the Senate absent a Congressionally authorized exception, which did not exist.  Def. Suppl. 6–7.

The Court's order approved Mr. Essayli's continued service without confronting that resulting, and still-ongoing, constitutional violation.  Equipped with the significant powers he claims to hold, Mr. Essayli is at least an inferior officer.  But the Constitution requires by default that inferior officers be nominated by the President and confirmed by the Senate.  The only exception is where Congress has statutorily authorized another appointment method for the office in question.  There is no such statute here, and Mr. Essayli cannot constitutionally wield officer-level powers.

Because the order left the defense's constitutional arguments unresolved, the Court should reconsider the order and address those issues.  Having done so, it should bar Mr. Essayli from supervising these prosecutions and dismiss the indictments.

**I.    Mr. Essayli is serving as at least an inferior officer.**

The parties appear to agree that, in his present capacity as first assistant, Mr. Essayli is wielding powers broad and enduring enough that they make him at least an inferior officer.  This follows from two points.  First, the parties agreed that while serving in his prior capacity as the purported acting U.S. Attorney, Mr. Essayli was at least "an inferior officer."  Resp. 15; *accord* Mot. 49–54; Tr. 31.  Second, that after this Court's order, Mr. Essayli continues to exercise the very same powers in his present

capacity that he did in his prior "acting" capacity.[1]

The case law confirms that Mr. Essayli is at least an inferior officer, having been appointed indefinitely to wield powers equivalent to those of a U.S. Attorney. Two qualities define the "basic framework for distinguishing between officers and employees": tenure and significant authority. *Lucia v. SEC*, 585 U.S. 237, 245 (2018).

**Tenure.** The first prong asks whether a person's powers are "'occasional or temporary' rather than 'continuing and permanent.'" *Id.* (quoting *United States v. Germaine*, 99 U.S. 508, 510 (1878)). Thus, for example, a civil surgeon was not rendered an officer when the commissioner of pensions designated him to conduct occasional examinations. *Germaine*, 99 U.S. at 511–12. The surgeon was only "called on by" the commissioner case-by-case as needed, he was not guaranteed any cases or pay at all, and he kept "no place of business for the public use." *Id.* at 512. In the event of "his absence from duty or refusal to perform," there was "no penalty … except his loss of the fee in a given case." *Id.*

Mr. Essayli's appointment is continuing and "indefinite," not occasional or case-by-case. Resp. Ex. 4, at 1 (¶ 1).; *see also* Resp. Ex. 3, at 1. He is compensated at an

---

[1] *See* Bilal Essayli (@USAttyEssayli), X (Oct. 28, 2025) ("For those who didn't read the entire order, nothing is changing. I continue serving as the top federal prosecutor in the Central District of California."), https://perma.cc/F3JJ-GS96; USAO Cent. Dist. of Cal. (@usao_cdca), YouTube, *Anti-ICE Rioting Arrests Announcement*, at 20:03 (Oct. 29, 2025) ("I'll just say we're less concerned with titles, and we're more concerned with the authority of my position, to be able to run this office as the chief federal law-enforcement officer in this district."); *id.* at 23:52 ("It's a distinction without a difference. And he says so in his order: it doesn't make a difference. Whether I'm the acting or the first assistant, I'm the top federal prosecutor, and I'll be supervising and managing this office."); *id.* at 24:18 ("I assure you, it doesn't change anything."), https://www.youtube.com/watch?v=nKhPVSRQMPY.

1  "annual rate," Resp. Ex. 4, at 2 (¶ 4), and "[d]uring and after" his service, he is

2  expressly subject to the suite of statutes that govern federal officials' disclosures and

3  conflicts of interest, *id.* at 1–2 (¶ 3).  If he fails to perform his duties, his "appointment

4  is at will and may be terminated."  *Id.* at 3 (¶ 5).

5      Mr. Essayli is serving as an inferior officer today, in his self-described capacity as

6  "the top federal prosecutor in the Central District of California."  *Supra* at 2 n.1.  That is

7  true even assuming his current powers might be reassigned if a permanent U.S. Attorney

8  is ever nominated and confirmed.  An officer acting under "special and temporary

9  conditions" is still an officer.  *United States v. Eaton*, 169 U.S. 331, 343 (1898).

10  Mr. Essayli's indefinite service is "not the sort of episodic, transient position that would

11  make someone [an] employee" rather than an inferior officer."  *United States v. Trump*

12  ("*Trump*"), 740 F. Supp. 3d 1245, 1301 n.60 (S.D. Fla. 2024), *appeal dismissed*, No. 21-

13  12311, 2025 WL 2017539 (11th Cir. Feb. 11, 2025).

14      **Significant authority.**  The Supreme Court has expressly declined to quantify its

15  "unadorned 'significant authority' test."  *Lucia*, 585 U.S. at 246; *see also Freytag v.*

16  *Comm'r*, 501 U.S. 868, 881–82 (1991).  The defense agrees with the Office of Legal

17  Counsel that this authority "primarily involve[s] binding the government or third parties

18  for the benefit of the public, such as by administering, executive, or authoritatively

19  interpreting the laws."  Officers of the U.S. Within the Meaning of the Appointments

20  Clause, 31 Op. O.L.C. 73, 77 (2007).  Classic examples of such sovereign authority

21  include "the public authority to arrest criminals, impose penalties, enter judgments, and

22  seize persons or property."  *Id.* at 88.

23      Prosecution is a prototypical exercise of sovereign authority.  *See, e.g.*, *Trump v.*

24  *United States* ("*Trump S. Ct.*"), 603 U.S. 593, 620 (2024).  As Justice Thomas recently

explained, "it is difficult to see how an official exercising the Department of Justice's duties to enforce the criminal law by leading a prosecution could be anything but an officer." *Id.* at 645 n.1 (Thomas, J., concurring).

Accordingly, both the courts and the Department of Justice have long understood U.S. Attorneys—even temporary ones—to be at least inferior officers. *United States v. Gantt*, 194 F.3d 987, 999–1000 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc); *United States v. Hilario*, 218 F.3d 19, 26 (1st Cir. 2000); United States Attorneys, 2 Op. O.L.C. 58, 58–59 (1978). And in the government's telling, the Supreme Court has already decided that U.S. Attorneys are inferior officers. Resp. 16 (citing *Myers v. United States*, 272 U.S. 52, 159 (1926)); *but see* Reply 30 n.5 (explaining that the *Myers* statement was dicta).

Mr. Essayli now wields the very same powers as a U.S. Attorney on an indefinite basis. Moreover, his prosecutorial authority is magnitudes broader than it was for the issue-specific independent and special counsels whom courts have classified as inferior officers. *See Morrison v. Olson*, 487 U.S. 654, 660–62 (1988) (independent counsel); *Trump*, 740 F. Supp. 3d at 1300–01 & n.60 (special counsel). And beyond prosecutorial powers, he is serving as a high-level government manager, overseeing the hundreds of attorneys and other employees assigned to the nation's most populous judicial district. *See NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1106 (9th Cir. 2023) (holding the NLRB General Counsel's significant authority established by prosecutorial powers as well as oversight of regional attorneys and employees).

Mr. Essayli's authority eclipses that found "significant" enough to render other individuals inferior officers. Although their work is essential to the operation of government, our nation's postmasters, treasury clerks, and election supervisors do not

make binding decisions every day about Americans' liberty, as Mr. Essayli does. But all have been found to hold officer status. *See Myers*, 272 U.S. at 106 (postmaster first class at Portland); *United States v. Perkins*, 116 U.S. 483, 484–85 (1886) (naval cadet engineer); *Ex parte Siebold*, 100 U.S. 371, 397–98 (1879) (Baltimore city election supervisors); *United States v. Hartwell*, 73 U.S. 385, 393–94 (1867) (clerk in the office of the assistant treasurer of the United States at Boston); *In re Hennen*, 38 U.S. 230, 258 (1839) (circuit court clerk).

**Supervision.**  The defense also agrees with the Office of Legal Counsel that supervision by other officers does not defeat the significant-authority prong.  Instead, significant authority depends on "whether a position possesses delegated sovereign authority *to act in the first instance*, whether or not that act may be subject to direction or review by superior officers."  31 Op. O.L.C. at 95 (emphasis added).

For example, at the Founding, even low-level revenue officers were inferior officers: they "had the delegated sovereign authority to make classification decisions, but those decisions could be subjected to two layers of appeal, the second being the Treasury Secretary himself."  *Id.* at 96.  For most taxpayers, the buck stopped with the revenue officer: his "decision could, without any subsequent sanction, by law bind the rights of others, even though by law readily subject to revision and correction on the initiative of the taxpayer."  *Id.* (cleaned up).

This closely mirrors the way the government has characterized Mr. Essayli's role. The defense argued that Mr. Essayli is a principal officer because he routinely makes binding decisions on actions like indictments and plea agreements.  *E.g.*, Mot. 52 ("The buck stops with [U.S. Attorneys]—not the Attorney General.").  In response, the government stressed that Mr. Essayli's "decisions are supervised and can be reversed by

the Attorney General and the Deputy Attorney General."  Resp. 16.  Binding decision-making authority, plus two hypothetical layers of review: that was enough to make tax collectors inferior officers.  *See Lucia*, 585 U.S. at 248–51 (classifying administrative law judges as inferior officers despite the availability of SEC review).  It is enough here too.

## II.    The Appointments Clause requires confirmation of inferior officers, unless Congress clearly provides otherwise by statute.

By default, the Appointments Clause requires Senate confirmation for all "Officers of the United States," whether principal or inferior.  U.S. Const. art. II, § 2, cl. 2.  The Excepting Clause provides the only exception: "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  *Id.*

The result is that a department head like the Attorney General cannot appoint a non-confirmed inferior officer like Mr. Essayli unless Congress has passed a law vesting her with that appointing authority as to the office in question.  *E.g.*, *Myers*, 272 U.S. at 162 ("Congress must determine … that it is willing that the office shall be filled by the appointment by some other authority than the President with the consent of the Senate.").  She "has no constitutional prerogative of appointment to offices independently of the legislation of congress." *Perkins*, 116 U.S. at 485 (quoting *Perkins v. United States*, 20 Ct. Cl. 438, 444–45 (1885)); *Trump S. Ct.*, 603 U.S. at 643 (Thomas, J., concurring) ("By requiring that Congress create federal offices 'by Law,' the Constitution imposes an important check against the President—he cannot create offices at his pleasure.").

When Congress has not vested that appointing authority in an agency head, an

inferior officer's appointment and service are unlawful.  *See, e.g.*, *United States v. Maurice*, 26 F. Cas. 1211, 1216 (C.C.D. Va. 1823) (Marshall, C.J.) ("I know of no law which has authorized the secretary of war to make this appointment.  …  Maurice cannot be considered as a regularly appointed agent of fortifications.").  And if "there is no law establishing the office that the [prosecutor] occupies, then he cannot proceed with the prosecution.  A private citizen cannot criminally prosecute anyone…." *Trump S. Ct.*, 603 U.S. at 643 (Thomas, J., concurring).

Strict adherence to the Excepting Clause prevents circumvention of Congress's constitutional authority—in particular, its authority in the "prescribing of reasonable and relevant qualifications and rules of eligibility of appointees, and the fixing of the term for which they are to be appointed."  *Myers*, 272 U.S. at 129.  When agency heads appoint officials outside the statutory pathways set by Congress, they obstruct the latter's constitutional role.  Thus, "there can be no expansion of the vesting power beyond what is permitted in the Clause, and there can be no usurpation of the appointment power 'by indirection.'" *Trump*, 740 F. Supp. 3d at 1261.

Against this constitutional backdrop, courts should expect that Congress will speak clearly when it decides to deviate from the default Senate-confirmation requirement.  To be sure, Congress need not use magic words.  But a finding that Congress vested authority merely by implication would "result[] in precisely the type of diffusion and encroachment that concerned the Framers in drafting the Appointments Clause." *Id.* at 1284.  Such scrutiny is warranted all the more because Congress plainly knows how to vest and regulate inferior-officer appointment authority explicitly when it intends to do so.  *See Weiss v. United States*, 510 U.S. 163, 170–71 (1994) (disagreeing that Congress regulated military-judge appointments "by implication" when Congress

"has not hesitated" to legislate "expressly" as to similar positions); *Trump S. Ct.*, 603 U.S. at 648 (Thomas, J., concurring) (explaining that no statute appeared to authorized the office of special counsel, "especially not with the clarity typical of past statutes used for that purpose").

## III. No statute exempts Mr. Essayli's service from the Appointments Clause's confirmation requirement

No statute exempts Mr. Essayli's current service from the Senate-confirmation requirement. And unlike other agency heads, the Attorney General does not have freestanding authority to appoint "such officers … as are necessary to execute the functions vested in [the agency head]." *Trump S. Ct.*, 603 U.S. at 647–48 & n.3 (Thomas, J., concurring) (quoting 7 U.S.C. § 610(a) (Department of Agriculture)). Mr. Essayli's continued service without Senate confirmation is therefore unlawful.

### III.A. 5 U.S.C. § 3345 and 28 U.S.C. § 546.

Congress has deviated from the constitutional default with respect to the office of the U.S. Attorney. In addition to the existing first assistant's automatic elevation, Congress has granted the President, the district courts, and the Attorney General the authority to appoint individuals to act in that office without confirmation. *See* 5 U.S.C. § 3345(a)(2), (a)(3); 28 U.S.C. § 546(a), (d). Those four pathways represent a trade-off: Congress ceded some of its constitutional power to the executive while imposing significant eligibility requirements and time limitations.

But none of those apply here. Mr. Essayli purported to resign from his now-expired role under § 546, and this Court has already correctly held that Mr. Essayli is not lawfully serving under the requirements Congress imposed via § 3345. *See* Op. 9–34.

The Court should reject the notion that there are other hidden paths available.  If

Congress had intended some never-confirmed inferior officer to wield powers

equivalent to those of a U.S. Attorney indefinitely—just without the title—it would

reasonably have been expected to say so, just as it did with respect to the

aforementioned express provisions.

### III.B.    28 C.F.R. § 0.137(b).

The Court's order concluded that Mr. Essayli "remains the FAUSA and may

perform the functions and duties of *that* office."  Op. 55.  But "first assistant" is not a

statutory office at all, and it carries no functions and duties.

As the defense's supplemental brief explained, the Attorney General's

designation of Mr. Essayli as first assistant "was not a separate appointment to another

job, like an appointment as an assistant U.S. Attorney under § 542."  Def. Suppl. 4.

Rather, "'first assistant' is a label that the Attorney General assigns under a Department

regulation implementing the FVRA."  *Id.* (citing 28 C.F.R. § 0.137(b)).  That label "is

merely a means of ordering succession," and "it does not confer additional powers"

except as triggered under the FVRA.  *Id.* at 5.  Mr. Essayli cannot "perform the

functions and duties of *that* office," Op. 55, because it has no functions and duties.[2]

At the very least, even assuming Mr. Essayli occupies an office called "first

_____

[2]  As the defense has explained, there is also no evidence that anyone has ever
lawfully delegated any powers to Mr. Essayli, including in his capacity as first
assistant.  Reply 19; Def. Suppl. 5–6.  The Attorney General delegated him no
powers in any capacity, relying on the erroneous assumption that the FVRA would
do that for her.  *See* Resp. Ex. 3, at 1.  An assistant human-resources manager
purported to delegate powers to him in his capacity as special attorney, but not as
first assistant, and she lacked the authority to make that delegation at any rate.  *See*
Resp. Ex. 4, at 1.

*UNITED STATES v. GARCIA & RAMIREZ*                    MOTION FOR LTD. RECONS. – 9

assistant," Congress has never passed a statute exempting that office from the confirmation requirement. If he is to continue to wield all the inferior-officer powers of a U.S. Attorney in his capacity as first assistant, he must therefore first be confirmed.

### III.C.    28 U.S.C. §§ 509 and 510.

The Attorney General's appointment order cited three statutes as supposedly conferring appointing authority on the Attorney General; this section addresses the first two. *See* Resp. Ex. 3, at 1 (citing 28 U.S.C. §§ 509–10, 515). The third is discussed below. *Infra* at 11–13.

Section 509 vests in the Attorney General all the "functions of other officers of the Department of Justice." Section 510 authorizes the Attorney General to "make such provisions as he considers appropriate authorizing the performance of any other officer, employee, or agency of the Department of Justice or any function of the Attorney General."

Both these sections are about allocating the powers of already-created Department offices and already-appointed Department officials. Neither section provides appointment authority nor exempts any office from the confirmation requirement. *Trump*, 740 F. Supp. 3d at 1266; *Trump S. Ct.*, 603 U.S. at 648 (Thomas, J., concurring).

### III.D.    28 U.S.C. §§ 542 and 543.

Section 542(a) authorizes the Attorney General to "appoint one or more assistant United States attorneys in any district when the public interest so requires."

Section 543(a) authorizes the Attorney General to "appoint attorneys to assist United States attorneys when the public interest so requires." These appointees are "special attorneys," named after the section's title.

The Attorney General did not invoke either statute in appointing Mr. Essayli, and the government has conceded that neither was used here.  *See* Resp. Ex. 3, at 1; Tr. 73–75.  By their terms, both statutes concern line attorneys who *assist* properly confirmed officers; neither statute bypasses the confirmation requirement for inferior officers.

### III.E.    28 U.S.C. § 515.

Section 515 sets some workplace policies for Department attorneys broadly. Neither of its provisions provides appointment authority or bypasses the confirmation requirement.

**Subsection (a)** allows the Attorney General to give permission to Department lawyers to practice and represent the government outside their home district.[3]  Those eligible for this permission are the Attorney General herself "or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law."

This provision is about "territorial flexibility" for the Department.  *Trump*, 740 F. Supp. 3d at 1267.  It does not grant the Attorney General the authority to appoint anyone.  Rather, it is a condition that applies to those already "appointed"—in the past tense—under some other law.  *Id.*; Reply 18; *Trump S. Ct.*, 603 U.S. at 648 (Thomas, J., concurring).

**Subsection (b)** requires a commission, oath, and salary for special assistants and

---

[3] "The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."

special attorneys.[4]  It applies to "[e]ach attorney specially retained under authority of the Department of Justice."  Those words just set the scope for the statute's requirements; they do not themselves authorize any appointments.  And again, the statute is phrased in the past tense—attorneys already "retained"—while requiring that that retention have taken place under some Department "authority."  *Trump*, 740 F. Supp. 3d at 1267–68.

The *Trump* Court conducted a comprehensive review of § 515(b)'s ordinary meaning, statutory context, statutory history, and historical context, and it concluded that the statute means what it says.  *See id.* at 1267–76.  Section 515(b) "does not confer upon the Attorney General officer-appointing power but merely establishes procedures (oath and commission) for already retained special attorneys who act in an assistant capacity."  *Id.* at 1267.

The statutory context is particularly compelling.  As the defense noted at the motions hearing, several adjacent sections mention special attorneys and identify a *different* statute that authorizes appointing them—but they do not even mention § 515. Tr. 90–91.  For example, § 519 directs the Attorney General to supervise "all United States Attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title."  Nothing about special attorneys appointed under § 515.

It would be bizarre for Congress to contemplate two species of special attorney— one under § 543 and one under § 515—only to then omit the § 515 species from these statutory lists of Department lawyers.  In enacting § 519, did Congress really mean that

---

[4]  "Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The Attorney General shall fix the annual salary of a special assistant or special attorney."

the Attorney General can supervise § 543 special attorneys but not § 515 ones?  No. *See Trump*, 740 F. Supp. 3d at 1270 (rejecting the "discordancy" in the government's "highly strained reading" that § 515(b) "somehow denotes a different category of 'special attorney'").  And as explained above, § 543 does not authorize Mr. Essayli's service; it permits the hiring of special attorneys to "assist" officers.  *Supra* at 10–11.

Because both halves of § 515 govern housekeeping matters for lawyers already hired under some other provision of law, they do not authorize the Attorney General to make appointments.  At the very least, they do not vest her with the authority to appoint inferior officers without confirmation.

## IV.    The Court should resolve the constitutional issue and reconsider its remedies analysis.

The Court should reach this constitutional issue, which it left unresolved in ruling on the motions.  *See* Def. Suppl. 6–7; L.R. 7-18.[5]  Compliance with the Excepting Clause "is not a trifling technicality": where the powers at issue are prosecutorial, "the consequences are weighty," and there "is no prosecution that can justify imperiling" the

---

[5] Although this district's local rule is phrased in terms of factual issues overlooked by a court's order, the Court is also empowered to reconsider overlooked or omitted legal issues.  *See, e.g.*, *OWLink Tech., Inc. v. Cypress Tech. Co.*, No. 2:21-cv-717, 2023 WL 4291978, at *2 (C.D. Cal. Jan. 23, 2023) ("While the Court clarifies that it *did* consider all of the parties' arguments … the Court also finds reconsideration of this one issue appropriate here due to its mistake or inadvertence in not addressing Defendant's affirmative defense in its opinion."); *Brown v. DirecTV, LLC*, No. 13-cv-1170, 2014 WL 12772076, at *2 (C.D. Cal. Dec. 11, 2014) ("Pursuant to Local Rule 7-18(c), a court should grant a motion to reconsider where it has failed to fully address a party's arguments on an issue that is important to a decision.").  Reconsideration is also warranted because the Court's order altered the relevant facts on the ground, effectuating the constitutional violation that the defense sought to avoid.  *See* Def. Suppl. 6–7.

"liberty that it secures for us all." *Trump S. Ct.*, 603 U.S. at 650 (Thomas, J.,

concurring).  And for all the reasons set forth above, the Court should hold that

Mr. Essayli cannot continue to wield inferior-officer powers without Senate

confirmation.

This ongoing Appointments Clause violation also warrants reconsidering the

Court's remedies analysis.  The Court's order dealt with a statutory violation and sought

to fashion a remedy within the confines of that statutory scheme.  *See* Op. 49–54.  Inside

that scheme, the Court identified "no basis to preclude Essayli from performing the

lawful duties of a FAUSA."  Op. 50.

That basis is the Constitution.  Whatever title Mr. Essayli uses, if he is to wield

inferior-officer powers, he must first either be confirmed or appointed to a statutorily

authorized inferior office.  Otherwise, he cannot exercise the significant governmental

authority he claims, and the Court should bar him from doing so.  It should do so both

because his continued service is unlawful and because the Court is empowered to

exclude such an officer in order to incentivize constitutional challenges and to

"penaliz[e] an agency's circumvention of the Appointments Clause."  *Cody v. Kijakazi*,

48 F.4th 956, 962 (9th Cir. 2022).

The constitutional nature of the violation further mitigates or eliminates what the

Court's order viewed as some constraints on its remedial authority.  For example, the

Court is not limited to FVRA-specific remedies and can prohibit Mr. Essayli from

violating the constitution, whatever his title.  *See* Op. 50 ("The FVRA says nothing

about other duly-authorized positions.").  Likewise, the Court interpreted the case law to

mean that it could not dismiss the indictments absent evidence that the grand juries were

substantially influenced.  Op. 41–42 (citing *Bank of Nova Scotia v. United States*, 487

1  U.S. 250, 256 (1988)).  But the cited standard expressly arose "where dismissal is

2  sought for nonconstitutional error."  *Bank of Nova Scotia*, 487 U.S. at 256.

3          The matter of the "first assistant" label should not distract from the remedial

4  analysis.  As explained above, "first assistant" is not a statutory office, carries no

5  powers, and has not been exempted from the confirmation requirement.  *See supra* at 9–

6  10; Def. Suppl. 4–7.  Mr. Essayli may hold the statutory position of special attorney,

7  *contra supra* at 11–13 (no such position under § 515), but the Court has already

8  correctly rejected the attempt to vest the U.S. Attorney's powers in him in that capacity,

9  *see* Op. 29–34.  The government's present effort to frame Mr. Essayli as exercising such

10 powers in a "first assistant" capacity is a misguided effort to fill an office that does not

11 exist.  *See Trump*, 740 F. Supp. 3d at 1304 ("Here, the problem is no mere 'technical

12 defect'—instead, the problem is the absence of a statutorily created office to fill in the

13 first place."); *Trump S. Ct.*, 603 U.S. at 643 (Thomas, J., concurring) ("If there is no law

14 establishing the office that the Special Counsel occupies, then he cannot proceed with

15 this prosecution.").

16         That effort, if approved, would be a windfall for the executive.  Because the first-

17 assistant office does not exist in the statutes, it has no statutory constraints.  So, rather

18 than comply with the time limits and eligibility criteria Congress has imposed on the

19 offices that do exist, Mr. Essayli can just serve indefinitely in one that does not.  That is

20 no remedy—it is lawlessness.

21                                *   *   *

22         Litigants who successfully challenge a constitutional violation are entitled to

23 adequate remedies.  *Lucia*, 585 U.S. at 251 & n.5; *Ryder v. United States*, 515 U.S. 177,

24 182–83 (1995).  Here, at the very least, that means an order stopping the ongoing

1  violation and barring Mr. Essayli from supervising these prosecutions. The defense also

2  respectfully asks that the Court reconsider and grant the requests for dismissal without

3  prejudice. The government injected a serious statutory violation into these prosecutions

4  and then, faced with that reality, invited an even graver constitutional breach.

5  Someone—whether Mr. Essayli or one of his supervisees—exercised significant

6  government authority in deciding to charge Mr. Garcia and Mr. Ramirez, and absent

7  Senate confirmation, that inferior-officer action was unconstitutional. They are entitled

8  to a "fresh look" at that decision, not "tainted" by constitutional error. *Cody*, 48 F.4th

9  at 962. If the government wishes to proceed, it should be required to seek fresh charges

10  without Mr. Essayli's involvement. *See Lucia*, 585 U.S. at 251 n.5 (cleaned up)

11  (explaining that "Appointments Clause remedies are designed not only to advance

12  [structural] purposes directly, but also to create incentives to raise Appointments Clause

13  challenges").

14       Barring Mr. Essayli's continued service would not be an unduly harsh result.

15  Congress has been generous with options for temporarily wielding the inferior-officer

16  powers Mr. Essayli now claims. It has deviated from the constitutional default, crafting

17  four different pathways for the executive to ensure that someone is doing the important

18  work of a vacant U.S. Attorney office while the executive works in good faith to obtain

19  confirmation. Here, eleven months after the vacancy occurred, the executive has not

20  even taken the first step in that process by offering a nomination.

21       The Constitution gives the executive a choice: follow one of those many flexible

22  paths, or secure confirmation. The solution is not to invent a fifth, blank-check option.

23  Congress has never written an office of "first assistant" into the U.S. Code, and it has

24  never exempted such an office from the confirmation requirement. Wearing that label,

Mr. Essayli cannot constitutionally wield the inferior-officer powers he claims, and the Court should bar him from doing so.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

Dated: November 10, 2025        By:  */s/ James Anglin Flynn*
                                     JAMES ANGLIN FLYNN
                                     DREW HAVENS
                                     AYAH A. SARSOUR
                                     Deputy Federal Public Defenders

                                     *Attorneys for Defendants*
                                     *Ismael Garcia, Jr. &*
                                     *Jaime Hector Ramirez*